```
JDL:TJS
F.#2012R00951
```

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -                    <u>COMPLAINT</u>

FLETCHER SALEEM VOISIN,        (21 U.S.C. § 846)
MIGUEL MOONSAMMY-GONZALEZ, and
RENEE BOYCE,

            Defendants.

EASTERN DISTRICT OF NEW YORK, SS:

        JUSTIN ECKERT, being duly sworn, deposes and states that he is a Special Agent with the Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such.

        Upon information and belief, in or about and between June 2012 and August 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FLETCHER SALEEM VOISIN, MIGUEL MOONSAMMY-GONZALEZ, and RENEE BOYCE, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, contrary to 21 U.S.C. § 841(a)(1).

        The source of your deponent's information and the grounds for his belief are as follows:[1]

---

[1] Because the purpose of this complaint is to state only probable cause to arrest, I have not described all the relevant facts and

1.     I am a Special Agent of the DEA, duly appointed according to law and acting as such.  I have been a Special Agent with the DEA for approximately one and a half years and am currently assigned to the New York Field Division Drug Enforcement Task Force, where I am tasked with investigating narcotics trafficking, money laundering and other offenses.  Based on my training, experience, participation in other narcotics and money laundering investigations, executions of search and arrest warrants, debriefing of confidential informants and extensive discussions with other law enforcement officers, I have become familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs, and the efforts of persons involved in such activity to avoid detection by law enforcement.

2.     The facts set forth in this Affidavit are based, in part, on my personal observations and experience, my participation in the investigation, conversations with other law enforcement officers and my review of documents and records pertinent to this case.  Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

---

circumstances of which I am aware.

3. Since approximately October 2011, the DEA has been investigating a drug trafficking organization ("DTO") based in Brooklyn, New York. As detailed more fully below, FLETCHER SALEEM VOISIN and other co-conspirators distribute narcotics from a warehouse located at 305 East 89th Street, Brooklyn, New York (the "WAREHOUSE").

4. During the course of the investigation, DEA Special Agents have obtained information from unpaid confidential informants ("Confidential Informant #1" and "Confidential Informant #2"). Confidential Informant #1 has been providing information to the DEA since approximately April 2012. Confidential Informant #1 has also admitted to her/his own involvement in narcotics trafficking. Confidential Informant #1 has not yet been charged with any offenses relating to her/his involvement in narcotics trafficking. However, she/he expects to be charged and is cooperating with the hope of receiving a lenient sentence for the forthcoming charges. Confidential Informant #1's information relating to FLETCHER SALEEM VOISIN has been corroborated by Confidential Informant #2 and by physical surveillance. For these reasons, I consider Confidential Informant #1 to be reliable.

5. Confidential Informant #1 stated that on approximately twelve occasions he/she was involved in providing cocaine to an individual he/she knew as "Saleem" in Brooklyn, New

York.  Confidential Informant #1 indicated that he/she delivered the cocaine to "Saleem's" residence, which he/she described as a three-story brownstone apartment located near a hospital near Bushwick Avenue in Brooklyn, New York.

6. Confidential Informant #1 stated that she/he delivered approximately 20 kilograms of cocaine to "Saleem" each month.  "Saleem" paid approximately $36,000 for each kilogram of cocaine.  Confidential Informant #1 indicated that she/he would drive a vehicle loaded with cocaine to a small alley located behind "Saleem's" residence and unload the packages of cocaine.

7. Confidential Informant #1 also stated that "Saleem" ran a small grocery store.  Investigation has revealed that VOISIN previously ran B8 Newstand, which was located at 2512 Foster Avenue, Brooklyn, New York.  VOISIN still maintains bank accounts in the name B8 Newstand.

8  DEA special agents also obtained information from Confidential Informant #2 that VOISIN, was engaged in narcotics trafficking.  Confidential Informant #2 was arrested in possession of multi-kilogram quantities of cocaine and began cooperating.  Following her/his arrest, she/he admitted to her/his own participation in the Target Offenses.  Confidential Informant #2 has not yet been charged for any offenses relating to her/his involvement in the Target Offenses.  However, she/he expects to be charged and is cooperating with the hope of

receiving a lenient sentence for the forthcoming charges. Confidential Informant #2's information relating to VOISIN's organization has been corroborated by Confidential Informant #1 and by physical surveillance. For these reasons, I consider Confidential Informant #2 to be reliable.

9. Confidential Informant #2 indicated that she/he delivered the cocaine to two individuals, "Bin Laden" and an individual "Bin Laden" introduced as his brother on approximately six occasions. Confidential Informant #2 indicated that "Bin Laden" had a bodega, which she/he believed was called B Street Newstand. As indicated above, VOISIN ran a bodega called B8 Newstand. Confidential Informant #2 stated that "Bin Laden" had a warehouse in Brooklyn where the cocaine was delivered.

10. In June 2012, agents installed a pole camera on the public street outside of the WAREHOUSE. Throughout June and July 2012, agents observed VOISIN, MIGUEL MOONSAMMY-GONZALEZ, and RENEE BOYCE at the WAREHOUSE on numerous occasions.

11. On August 1, 2012 between 9 p.m. and 10 p.m., agents observed a white pickup truck pull into the garage bay of the WAREHOUSE. The garage door then closed. Approximately 15 minutes later, the garage door opened and the white pickup truck left.

12. At approximately 10:25 p.m., agents executed a search warrant, issued by the Honorable Joan M. Azrack, on the WAREHOUSE. As agents approached the WAREHOUSE, the garage bay door

opened and VOISIN, BOYCE, and GONZALEZ began to leave through that door. Agents identified themselves and indicated that they had a warrant to search the building.

13. Agents then entered the WAREHOUSE. The WAREHOUSE smelled strongly of marijuana. On the first floor, in the main bay, which VOISIN, BOYCE, and GONZALEZ has just exited, agents found duct tape wrapping consistent with the wrapping used on narcotics was on the floor approximately ten feet from the garage door. Further into the warehouse, agents found approximately nine buckets containing marijuana in clear plastic bags. Several of the buckets had no lids and the marijuana was plainly visible in the bags. There were also two bales of marijuana weighing approximately 25 pounds each. In a desk located adjacent to the garage door, agents located a loaded semi-automatic pistol.

14. On the second floor of the WAREHOUSE, agents found seven kilograms of white powder, which field-tested positive for the presence of cocaine, located in plastic bags inside a bucket. Adjacent to that was a bucket containing plastic bags containing a substance that appeared to be cocaine base. That substance field-tested positive for the presence of cocaine. Both of those buckets were located inside an open cardboard box. The cocaine and cocaine base would be plainly visible to anyone in that room. In the same room, agents found a scale, a stove, and spoons in plain view. All of which is consistent with the equipment necessary to "cook"

cocaine base from cocaine.  In addition, a bullet-proof vest was found on the floor of the room in plain view.

15.   In addition, in desks located in the WAREHOUSE, agents discovered two additional loaded handguns.  Agents also found approximately $300,000 in United States currency, an identification bearing the picture of VOISIN with a different name, a ledger that appears to be a drug ledger and a surveillance system for the WAREHOUSE during the course of their search.

16.   After narcotics were located in the WAREHOUSE, VOISIN, GONZALEZ, and BOYCE were placed under arrest.

WHEREFORE, your deponent respectfully requests that the defendants FLETCHER SALEEM VOISIN, MIGUEL MOONSAMMY-GONZALEZ, and RENEE BOYCE be dealt with according to law.

_____
JUSTIN ECKERT
Special Agent
Drug Enforcement Administration

Sworn to before me this
2nd day of August, 2012

_____
THE HONORABLE ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK